Last but not least, may it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioners, Javier Maravilla-Maravilla and Claudia Lopez-Sanchez. The Board's decision denying the motion to reopen in this case rests on two airs of law and an abuse of discretion. The most important air of law is that in finding that the petitioners had failed to demonstrate that they were prejudiced by the incompetence of their former counsel, Mr. Gatta, the Board required the petitioners to demonstrate prima facie eligibility for cancellation of removal. We know this from two different things that the Board said in its decision. First, in finding that the petitioners had not been prejudiced by Mr. Gatta's failure to inform the Board that Mr. Maravilla's diabetic mother had become a permanent resident, the Board said that the fact that she is diabetic and does not work without more does not demonstrate prima facie eligibility for the relief sought, so as to warrant reopening. Second, the last sentence of the Board's decision says, lastly, we do not find that the respondents have established through their motion that the outcome of their hearing or appeal would have been different but for the alleged ineffective assistance of counsel. Again, that's setting forth the standard of prima facie eligibility. But to establish prejudice under the law of this Court, the petitioners simply have to show that there are plausible grounds for relief. The Court most recently made that statement in Judge Fletcher's opinion in Lynn. And quite clearly, there are plausible grounds in this case. The underlying issue in Lynn was also an ineffective assistance. Yes. Yes, it was. And also, in the Singh case, very recently decided by the Court, which we identified in our 20HA letter, the Court says the same thing. The standard in determining prejudice is whether there are plausible grounds for relief. And here there are clearly plausible grounds for relief. Mr. Gatta never even asked these petitioners if they were going to be forced to leave the country, what would they do with their children. He didn't ask them this question prior to the hearing. He didn't ask them this question during the course of the hearing. And this is a central question in the case. On appeal, or with the motion to reopen, the petitioners presented their sworn declarations that if they're forced to depart the United States, because they are unsure of whether they're even going to be able to feed their children, they have decided to leave their children with the male petitioner's father here in the United States. And that is going to put a huge strain on Mr. Madavia's father, who's a permanent resident of the United States, because until now, Mr. Madavia's father, Luis, who is a seasonal worker, has had to rely upon the financial support of Mr. Madavia during those portions of the year that he's been unable to work. He's a 60-year-old man. His livelihood is gained from working in the fields. He's 60 years old. You can't imagine him working in the fields for maybe another five years. In addition to taking care of Mr. Madavia's two children, he's going to lose the support that Mr. Madavia has been providing him, because Mr. Madavia is going back to grinding poverty. There's no doubt about that. The village that he came from, when he left it, it did not even have electricity or running water. The nearest doctor was a one-hour car ride away, but he had to take a donkey, because they didn't have a car. The strain on Mr. Madavia's father will be exacerbated by the fact that he's already in the position of having to care for his diabetic wife, who recently became a lawful permanent resident. Now, the government says that we can't even look at that, because what we're doing is second-guessing the question. Yeah. The government's jurisdictional position, it seems to me, it reflects a lot of chutzpah, because the ultimate question in this case is whether these petitioners were afforded a fundamentally fair proceeding. And the government's position, it seems, is that this Court doesn't have the jurisdiction to ensure that these petitions were granted a fundamentally fair proceeding. And there's nothing in 242A2B that says anything like that. Well, my understanding is that it's slightly more discreet, but I suspect, still contrary to our case law, they're saying with regard to the prejudice issue, we can't look at the exceptional and extremely unusual hardship, because we couldn't look at it on direct review. Well, that's because the government is conflating the two standards. And obviously, the two standards are distinct. The issue before this Court is not whether there's exceptional, extremely unusual hardship. The issue is whether there's prejudice. And all we have to demonstrate to show prejudice is that there are plausible grounds for relief. So they're two separate questions. So let's suppose – let's move on to the other thing that you have to show that's part of the prejudice. Yeah. One other point on the jurisdictional issue, though, Your Honor. I mean, clearly, the threshold question here is whether the Board even applied the correct standard. And certainly, under this Court's case law, legal questions of that sort are not – this Court has jurisdiction to decide legal questions of that sort. Legal questions of which sort? I'm sorry. Well, any legal questions. This 242A2B only deprived the Court of jurisdiction to review discretionary determinations, and questions of law have never been considered by this Court to be discretionary determinations. On the issue of continuous physical presence, the Board found that the Petitioners had failed to establish that the evidence that they were seeking to present was not previously unavailable because of Mr. Gadda's ineffective assistance of counsel. They say in their decision that Petitioners admit that they asked former counsel if witnesses would help, to which he replied in the affirmative, and they were told to bring evidence regarding the male Petitioner's current employment. That's the Board's reasoning. Well, the first thing is Mr. Gadda never raised the issue of witnesses with the Petitioners. It was the Petitioners that raised the issue of witnesses with him. What I found most troublesome was that in the hearing before the final hearing, when Mr. Gadda, as I gather was his warrant, didn't show up. Yes. The IJ was very specific with these people about what kind of evidence they needed to bring in. Yeah. I want to walk through that part of the transfer, because I agree that that is a critical portion of the hearing, but I frankly think it supports the Petitioners' position rather than the government's position. The first thing about that hearing is that it was the trial attorney who was asking, telling the Petitioners that they needed to bring in certain documents. And this is on page 174, beginning on page 174 of the transcript. And the trial attorney for the, what I'm going to forever call the Immigration and Naturalization Service, told the Petitioners that he thought they needed to present tax returns and W-2s for certain years, 1988, 1990, 1991, 92, and 93. And that is very specific. It's true. But when the Petitioners appeared for their final hearing, they made clear that they never filed taxes for those years. So the instruction that they bring in tax returns for those years was useless, because they never actually filed taxes during that period of time. And that's made clear on pages 195 and page 202 of the administrative record. Then moving on, the trial attorney says to them, I'm also going to need some documentation showing that you were here at the beginning of 1998 up until April of 1998. Well, that's just a four-month period of time. That's certainly not going to cover the entire 10-year period. And it's misleading, because they needed documentation showing that they were here from at least before October 6, 1997, showing that they were here from 1998, January through April, wasn't going to make their case. And then finally, there were at least three different times where the Petitioners asked questions of the immigration judge or the trial attorney about, well, what if I get a letter of this or that sort? And on three separate times, either the judge or the trial attorney told them, no, a letter of that sort is not going to be sufficient. And the message that I think that that sent to the clients was a discouraging one. I think it actually discouraged them from trying to obtain letters that might have helped prove their case, because the immigration judge and the trial attorney had made clear at that hearing that Mr. Gatta failed to attend that those sorts of documents were going to be insufficient. And then finally, the female Petitioner asks, well, what if I get a letter from the persons from whom I rented an apartment? And the I.J. responds by saying, somewhat vaguely, well, it depends. Without being able to see the letter, I can't evaluate the weight that I can give to it. But that's exactly the point. I mean, we can't rely upon the immigration judge, who's trying to be helpful, and the trial attorney was also trying to be helpful, but they don't know the case. It's not their job to force their clients, the Petitioners, to identify all the various sorts of evidence that may be presented and to ensure that they have a combination of witnesses and documentary evidence to cover the complete period of time. So although I admire what Judge Stockton did in this case, she really did make an attempt to help these Petitioners. Ultimately, as you, Your Honor, pointed out in your decision, itura baria, I'll never be able to pronounce it, even when the court gives clear instructions, it's perfectly reasonable for aliens to rely upon an assumption that their attorney is competent and is doing the right thing, and that's what happened here. They relied upon their attorney, and their attorney, Mr. Gatta, completely let them down. I'll reserve my remaining two seconds. Good afternoon, Your Honors. Thomas Ragland for the Respondent. Your Honors, there are a number of issues in this case. I'd like to speak first to the jurisdictional issue, which is that the government submits that the court lacks jurisdiction to consider the issue of the Board's finding of failure to prove exceptional and stigmatized hardship. We certainly are not deciding that. We're deciding whether there was a successful multitorial of assistance, and in the course of that, we have to decide a prejudice question. We've done that many times, have we not? Yes, Your Honor. Including the exceptional circumstances question. All we have to find is that counsel was incompetent and that they had a plausible claim. That's all. Yes, Your Honor. The Petitioners were prejudiced by their counsel's ineffective assistance, and the Board in this case found that they were not prejudiced, that the outcome of their case would not have been different, that they had not shown exceptional, extremely unusual hardship. Which is the wrong standard. That the outcome would have been different, or that the other standard is that they show implausible grounds for eligibility for the relief. That's the wrong standard, and we don't have to look. We don't have to decide whether they did, in fact, have exceptional, extremely unusual circumstances. We just have to decide that the Board applied the wrong standard, and had they applied the right standard, they might have come to a different conclusion as to whether to reopen, not as to whether or not there was exceptional, extremely unusual circumstances. Well, Your Honor, I respectfully disagree because what the Board was deciding was whether reopening was appropriate based on the allegation of alleged ineffective assistance, and that the Petitioners claimed that they were prejudiced as a result of that. Now, in order to show the prejudice, they would have had to show that there were plausible grounds for eligibility for cancellation of removal, which would include. Did the Board ever decide whether there were plausible grounds? I'm sorry, Your Honor? Did the Board ever decide that question? The Board decided that the Petitioners had not in any event demonstrated exceptional, extremely unusual hardship, and so therefore could not demonstrate eligibility for cancellation of removal. I'm really not understanding your argument. Are you essentially saying that the Board decided to skip the ineffective assistance question and just essentially in one swoop reopen and then decide the merits? What the Board decided. What the Board was saying was they're not going to win, and that's not the standard. No, Your Honor. What the Board said addressed reconsideration and reopening and the issue of prejudice and found that the immigration judge correctly found the respondents had not met their burden of establishing exceptional, extremely unusual hardship. That's the wrong standard. Well, Your Honor, the standard is whether they can demonstrate plausible grounds for the relief sought, and if the Board has stated that there was no error in the immigration judge's determination that there are not grounds for demonstrating eligibility for cancellation of removal. But that's not plausible. Presumably they're looking for a reopening. When you get reopening, they haven't necessarily given all their evidence. They only have to give enough evidence at this point. To show that they have a plausible possibility of succeeding. The Board skipped that question and went to the merits. And you need to tell us why it was entitled to do that. Well, Your Honor, in order to demonstrate that there were plausible grounds for prevailing on their application for cancellation of removal, there would have to be evidence demonstrating the elements of cancellation, exceptional, extremely unusual hardship, continuous physical presence. Plausibly. Yes, Your Honor. Right. So somebody could decide in their favor, and then they get to put on their evidence and do it. Well, Your Honor, I think the Board was considering a number of decisions in this case, including one, I mean, from this Court, including one cited by Petitioner's counsel. It's already finding that prejudice is shown where Petitioner's demonstrate that the outcome of the case would have been different. Well, if you can show that, then you've certainly shown prejudice, but you don't have to show that much. Well, that there are plausible grounds for eligibility. And what I'm arguing is that the Board found that they had not shown in any event, irrespective of the ineffective assistance, that there was not grounds for finding exceptional and extremely unusual hardship in this case. Yeah, but that's a matter of discretion, your discretion. Yes, Your Honor. And are not these Petitioners entitled to have somebody exercise that discretion? So far, nobody has, right? The – with respect to the evidence that was submitted, yes. With respect to the evidence that was submitted by their previous attorney, and then – Well, but if the performance of the previous attorney is inadequate, that's the issue. Then we go to whether or not that was prejudicial. Well, by the inadequate performance of prior counsel, he denied these Petitioners the opportunity to have somebody exercise their discretion. Why isn't that it? Unless you say that this is so totally unlikely that there would be nobody who would exercise their discretion. But that isn't what the Board said. They said it would not have been different. That's not a matter of just saying we're exercising our discretion, is it? Now, if a litigant is entitled to have somebody exercise their discretion, that's the right thing to do, is it not? Yes, Your Honor. Now, it's one thing to exercise discretion on whether to reopen. It's another thing to exercise under the standard or under the consideration of whether to withhold a deportation. Anyway, that's the distinction I think we're faced with, is it not? Yes, Your Honor. I think there is that distinction. My understanding of the Board's determination was that they went further and considered the new evidence that the Petitioners submitted with their motion to reopen alleging ineffective assistance. But they didn't say that. Well, Your Honor, in the last paragraph of the Board's decision, as regards to the Respondent's motion to reopen to present new evidence regarding continuous fiscal presence and hardship. I mean, isn't the real problem that the BIA's entire opinion on the motion to reopen disregards the ineffective assistance? Entirely. It never reaches it. It says that this is an attempt to re-argue their original case, and it wasn't an attempt to re-argue their original case. And it then troops through all the evidence as if it were an attempt to re-argue their original case. And even that last statement, i.e., with regard to the outcome would have been different, would be an appropriate standard if this was a merits reopening petition, right? In other words, if they were coming in saying, not alleging ineffectiveness, but just that here's some new evidence. Yes. Then that standard would be an appropriate standard. Well, Your Honor, I think I'm surmising what the Board was doing in this case was I'm surmising that the Board's actions in this case were taken because in considering a motion to reopen and whether to grant a motion to reopen that is accompanied by new evidence, the Board, by necessity, must consider that new evidence and consider whether And it matters a lot whether you consider it through the filter of whether there was an ineffective counsel and whether you consider it directly. And they never understood that distinction. Is that right? Well, I have to concede, Your Honor, the Board's It was simply an attempt to re-argue their earlier case. Well, I think the Board's decision is inartfully written. What I think the Board was attempting to do in this case was saying we recognize your ineffective assistance allegation and that your claim is but for In the last five words. Yes. In the previous several hundred, they've been. And recognize that they're arguing that but for that ineffective assistance, you would have demonstrated eligibility for relief or as the standard is, plausible grounds for such eligibility. But when we look at the new evidence you've submitted, even when we consider that new evidence that you're claiming the ineffective assistance previously denied you the opportunity to present, even when we consider that new evidence, that the outcome does not change. The outcome would not have been different. And so there's no showing of prejudice based on the alleged ineffective assistance. Do you think the BIA should be holding a de novo hearing like that? Well, Your Honor, it's not a de novo hearing. Again, when they're considering a motion to reopen, they consider new evidence that's submitted with the motion in order to determine whether reopening is appropriate or not. So it was toward deciding whether reopening was appropriate, not to retry the hearing. Let me correct, and then we will stop, that there are two different standards. One that applies on a merits reopening when you're coming in with new evidence but not alleging ineffective assistance. Yes, Your Honor. And the second when you are alleging ineffective assistance. Yes. Where you don't have to prove up a prima facie case at that point. That's right. And the Board seemed to be applying a prima facie – was applying a prima facie case standard, not the standard that's applicable at ineffectiveness. And they don't even seem to have recognized that there was an ineffectiveness  And they seem to have added up the last five words. But nothing in the analysis runs through it on that standard. It's all run through. It says so. In essence, the Respondents seek reconsideration of hardship issue to their children. That isn't what they were doing. They weren't seeking reconsideration of the hardship issue. They were seeking a reopening to put on a case because they hadn't been able to because of ineffective assistance. So they just have the wrong case somehow. Maybe you can help us educate the BIA. All right. Thank you, Brent. Thank you. I have – I want to go to the other issue with counsel. What did – did you offer in support of new evidence by way of the 10-year presence? A number of affidavits, Your Honor, and all of these individuals could be called in as witnesses. There's – on page 85 of the record, there's an affidavit from John Biskey documenting Mr. Madavia's employment with him since mid-1986 to 1988. Going back to sometime prior to October of – Yes, Your Honor. It goes back to mid-1986. On page 87, there's an affidavit of – Okay. So we have been focusing here in our discussion on the evidence as it relates to the hardship. But I take it that nobody has any real argument about the new evidence on the 10-year short. I don't think so, Your Honor. Most – this is laid out basically between pages 85 and 97 of the history. All right. Thank you. Thank you very much. Thank you, Your Honor.
judges: B. Fletcher, Leavy, Berzon